# CHARLESTON.

C. RUSSELL HINERMAN *et al.* v. S. C. HINERMAN *et al.*

Submitted January 14, 1920.   Decided January 20, 1920.

1. WILLS—*Direction to "My Boys" to Sell Farm and Divide Proceeds Relates to Male Children.*

    A provision in a will directing "my boys" to sell testator's farm and divide the proceeds among "the boys," in the absence of some other controlling factor, will be construed to refer to the male children of the testator. (p. 351).

2. SAME—*Devise of Farm Construed to Include All Lands Owned by Testator.*

    Where the owner of the whole of one tract of land is also the owner of a one-half undivided interest in an adjoining tract,

one of his sons being the owner of the other one-half undivided interest, all of which land is agricultural land, and the father who owns such tract and the half interest in the other tract lives on said land and cultivates both tracts thereof, an expression in his will devising his farm to certain designated devisees will be taken to include all of the land so owned by him, in the obsence of any testimentary disposition evidencing a contrary intent. (p. 351).

Certified Questions from Circuit Court, Wetzel County.

Suit by C. Russell Hinerman and others against S. C. Hinerman and others. Demurrer to bill overruled, and questions certified.

*Reversed. Demurrer sustained,*

*Thayer M. McIntire,* for plaintiffs.
*Thos. H. Cornett,* for defendants.

RITZ, JUDGE:

J. B. Hinerman departed this life in the year 1909, being at that time the owner of a tract of land of one hundred acres situate in the county of Wetzel, and likewise the owner of a one-half undivided interest in an adjoining tract of one hundred and fifteen acres of land, one of his sons being the owner of the other undivided interest therein. In the year 1906 Hinerman made a holographic will by which he undertook to dispose of all of his property. This will was admitted to probate shortly after his death. It disposed of his personal property, which was inconsiderable in amount, and then provides as follows: "and fur my farm I want my boys to sell it at whatever they think it is wirth and divide it betweend the buys I want this all done by my children without going to law." At the time of his death the testator was a widower and left surviving him six sons and two daughters, and also five grandchildren, the offspring of a seventh son who died before his father. Upon the assumption that the provision of the will above referred to was for the benefit of the six living sons they took charge of the real estate and divided it among themselves instead of selling it. This suit was subsequently brought by the two daughters of the testator and his five grandchildren above referred to for the purpose of having partition of the lands among all of the children of the testator and the five grandchildren aforesaid, the contention being

that the will was void for uncertainty so far as it attempted to dispose of the real estate, and that as to this estate Hinerman died intestate. It does not appear from the direct allegations of the bill, but it does appear from the exhibits filed therewith, that the tract· of one hundred acres of land and the tract of 115 acres of land adjoined each other. The averment is that they are· valuable agricultural lands and that the testator lived thereon at the time of his death, and for sometime before, and that the same were being farmed or cultivated. It does not appear from any allegation in the bill whether the son who died before his father was living at the time the will was made or not, although counsel for the defendants in his brief alleges that this son died before the will was made in 1906. This fact may not be very material in this particular case, in view of the character of this suit, which proceeds upon the sole theory that as to this real estate Hinerman was intestate, and the same passed to his heirs-at-law under the statute of descents and distributions. This contention is based upon two theories: first, that the object of the testator's bounty is too indefinite and uncertain. to allow the will to have validity; and second, that the subject-matter of the devise is too uncertain and indefinite to give to it any effect.

It will be observed from the quotation above made that Hinerman described the object of his bounty as "the boys" and this expression succeeds the expression "my boys" in the same sentence. If, as contended by the plaintiffs, this term is too indefinite to have any meaning ascribed to it in this paper then, of course, the will would be void as to the disposition attempted to be made of the real estate, and the testator's interest therein would pass under the law of descents and distributions to his heirs. But is there any uncertainty as to the disposition Hinerman intended to make of his property? He wrote this will himself, and while it is not artfully expressed, it seems to us that the meaning of the testator is quite as clear as is frequently the case where the document is more ornate and elaborate. It is argued that the term "boys" in its ordinary meaning signifies the male youth of the land, or of the neighborhood, as the case may be, and in another and more qualified sense it is said to be a designation of those companions of the party using it with

whom he spends his convivial or social hours. But we are too familiar with the forms of paternal expression to think for a minute that a father uses the word in any such sense as this in his will. No one can doubt to whom Hinerman had reference when he wrote this will. Parents uniformly refer to their children as the boys or the girls, regardless of their ages, and this form of expression or designation is too universal for us not to give it effect in construing this paper. We do not think it can be doubted that the testator nominated his male children as the object of his bounty in this provision of his will. If all seven of the boys were living at that time he intended all seven of them to participate therein, and if only the six who were living at the time of his death were then living, clearly he intended his farm to go to those six.

Of course the description of the subject-matter of the devise as "my farm" would not of itself identify the land intended to be passed under the will, but it must be borne in mind that it is always proper in construing a will or a deed to apply the description contained in it to the land evidently referred to, in order to make certain the terms used. We have here a man living on lands, one part of which he was the entire owner of, and the other the owner of a half·interest, and farming the whole. This condition it appears was the same at the time he made the will as it was at the time of his death three years later. We must not lose sight of the fact that in construing wills it is the purpose to give to the testator's language effect if it can be done without doing violence. Of course, the purpose of all ·construction of deeds, as well as of wills or contracts, is to arrive at the intention of the parties, but we cannot go beyond the language of the paper in ascertaining that intent, neither can we disregard the expressed intent simply because the disposition made by the testator of his estate does not comport with our ideas of equity or propriety. The meaning must be collected from the words of the will, for the object of construction is to declare the expressed intention of the testator, and not what someone else may think was his real intention, or should have been his real intention. Now it is quite clear from the language here that the testator's expressed intention was that his boys should have his farm, and when we apply this language

to the facts which existed at the time the testator made his will, and at the time of his death, we have no trouble in ascertaining what that farm was. It was the land that he lived upon and cultivated as a farm, upon which he carried on his agricultural operations. Upon a consideration of this whole paper we do not perceive any difficulty in arriving at the clear intent of the testator, both as to the objects of his bounty, and as to the subject to which he intended to apply it.

It may be that the five grandchildren of the testator, who are plaintiffs, and who are the children of the son who was dead at the time of the testator's death, would be entitled to participate in the division of the land under the will if their father was living at the time the will was made, because of the provisions of § 12 of ch. 77 of the Code, but this bill does not present a cause for relief under that statute. It proceeds on the sole theory that Hinerman was intestate as to the real estate.

We are of opinion that the bill does not make out a case for any relief upon that theory, for which reason the demurrer should have been sustained, and we accordingly answer the question certified.

*Reversed.  Demurrer sustained.*